Texas & Pacific Railway Company v. Newsome & Williams.

Decided December 19, 1906.

**1.—Value—Opinion—Cross-Examination.**

A witness who has given his opinion of the value of a horse at the destination to which a carrier undertook his transportation, may be cross examined as to the price at which such an animal could be bought elsewhere, and its effect on its market value at place of destination.

**2.—Pedigree of Animal—Evidence—Certificate of Registration.**

A certificate of registration of a trotting stallion, though testified to be a document which would be accepted by horsemen of America as authentic registration of the animal's pedigree, is not admissible in evidence without proof of its execution as at common law.

**3.—Special or General Damages—Fitness for Breeding Purposes.**

The pedigree and fitness for breeding purposes generally of animals injured in transportation may be shown in proof of value and damages under the general allegation thereof, depreciation therein not being a special damage which must be alleged as in case of entry for a certain competition or contract for breeding.

Appeal from the District Court of Tom Green County. Tried below before Hon. J. W. Timmins.

*W. L. Hall, Joseph Spence, Jr.,* and *C. O. Harris,* for appellant.—The certificate of the American Trotting Register was wholly irrelevant, immaterial, and not admissible for any purpose in this case, it not being shown that it was given for, or on account of, or in any manner related to the horse in question. Texas & Pacific Ry. Co. v. Ellerd, 12 Texas Ct. Rep., 827; Missouri, K. & T. Ry. v. Davidson, 1 Texas Ct. Rep., 338; McKinney v. Bradbury, Dallam, 444; Gulf, C. & S. F. Ry. Co. v. Dunman, 31 S. W. Rep., 1070.

Testimony of special damages is not admissible in the absence of allegations specially setting out such damages. Gulf, C. & S. F. Ry. Co. v. Dunman, 31 S. W. Rep., 1070; Gulf, C. & S. F. Ry. Co. v. Cole, 16 S. W. Rep., 176; Missouri Pac. Ry. Co. v. Breeding, 16 S. W. Rep., 184; Gulf, C. & S. F. Ry. Co. v. Maetze, 2 Willson, sec. 632, 633; Treadwell v. Whittier, 13 Am. St. Rep., 180; Stevenson v. Smith, 28 Cal., 103, 87 Am. Dec., 107; Potter v. Froment, 47 Cal., 165; Hunter v. Stewart, 47 Me., 419; Lewiston T. Co. v. Shasta & W. W. Ry. Co., 41 Cal., 565; Gay v. Winter, 34 Cal., 162; Laing v. Colder, 8 Barr, 479; Saffer v. Dry Dock, E. B. & B. R. Co., 53 Hun, 629; Taylor v. Monroe, 43 Conn., 36; Chitty on Pleadings, 395, 396; Hutchinson on Carriers, 796; Sedgwick on Damages, 575; Sutherland on Damages, 763.

There was neither allegation nor proof, that the appellant, or either of the railroads that transported the stock in question, had any notice, that the horses were standard bred, or that Carnegie possessed speed qualities, developed or undeveloped, or that plaintiff expected to develop, or that could be developed. Missouri, K. & T. Ry. Co. v. Belcher, 35 S. W. Rep., 6; Western U. Telegraph Co. v. Edmonson, 42 S. W. Rep., 549; Harvey v. Connecticut Railroad Co., 124 Mass., 421; Vicksburg, etc., Ry. Co. v. Ragsdale, 46 Miss., 458; Priestly v. Northern I. & C. Railroad Co., 26 Ill., 205; Hadley v. Baxendale, 9 Exch., 341; Hutchinson on Carriers, secs. 772, 773.

The record disclosing the fact that there was no market value for said horse at San Angelo, Texas, the place of destination, but showing that appellees relied solely upon the actual and intrinsic value of said horse at San Angelo, Texas, testimony as to the value of the horse in the supply market, that is what such a horse could be purchased for in the supply market, is admissible as affecting the actual or intrinsic value of said horse at San Angelo, Texas, which value would be governed by the value in the supply market plus the freight and expenses of transportation, say from Memphis, Tenn., the supply market, to San Angelo, Texas, place of destination. Gulf, C. & S. F. Ry. Co. v. Jackson & Edwards, 14 Texas Ct. Rep., 100; Texas & Pac. Ry. Co. v. Dishman, 14 Texas Ct. Rep., 650; Gulf, C. & S. F. Ry. Co. v. Anson, 11 Texas Ct. Rep., 97.

No briefs for appellee were on file.

FISHER, CHIEF JUSTICE.—The appellees brought this suit against the Gulf, Colorado & Santa Fe Railway, Company, and the Texas & Pacific Railway Company, alleging, in · substance, that they had sustained damages by reason of the delay and injury to certain horses transported from Memphis, Tennessee, to San Angelo, Texas. The damages claimed are charged to have been occasioned by the negligence of the two roads mentioned. The animals in question consisted of what is claimed as a standard bred stallion, by the name of "Carnegie," whose pedigree and standing it is claimed was registered in the American Trotting Register, and seven mares of the same breed, which were entitled to be registered. The animals were valuable for breeding purposes and for their speed.

Verdict and judgment below was in favor of the Gulf, Colorado & Santa Fe Railway Company, and in favor of the plaintiffs as against the Texas & Pacific Railway Company for the sum of $759.91.

Appellants seventh assignment of error is as follows: "The court erred in sustaining the plaintiffs' objection to the question propounded by the defendant to the witness W. Jones, said question being as follows: 'If that horse was bought for, and other horses like him could be bought in the supply market for $300, would he be worth $7,000 on the market here?'" This question had reference to the horse "Carnegie," and which upon objection the witness was not allowed to answer. While it is true that the evidence as to the horse "Carnegie" having a market value at San Angelo is meager, we can not say it is not of some probative force, but we are impressed with the idea that the most substantial evidence in the record relating to the value is based upon the opinion of witnesses as to his real or reasonable value at that point. There is evidence that the horse, within a recent date of the time he was shipped to San Angelo, was in good condition when purchased by the plaintiffs who paid for him the sum of only three hundred dollars; and the evidence of all of the witnesses upon the subject of value was merely the expression of their opinion, based upon either what they supposed to be the market value, if any, at San Angelo, or upon an estimate of what they considered to be his reasonable value; and the evidence upon this subject covered a wide range, from that of a few hundred dollars to that of seven thousand dollars. Jones was one of the principal witnesses for the plaintiffs on the subject of value, and his estimate, based upon his opinion, reached as high as $7,000. This much is stated in order to show that it was material to test by cross-examination, the accuracy of the witness Jones's conclusions; and the question set out in the assignment propounded by the defendant was a searching inquiry which if he had been permitted to answer, may have shaken the faith of the jury in his high and exalted estimate. In offering the question, the appellants' counsel stated that they expected to show that the value of such a horse was, to some extent, controlled by what was his value in the supply market where he was purchased, and where horses of like kind could be purchased.

It also appears from the bill of exceptions that the only objection urged to the evidence was that it was immaterial, which objection, as said before, was sustained. Of course, we recognize the general rule that

the value, not where purchased but at the place of destination, should govern; but here the value was so speculative and uncertain for horses of this class at San Angelo, the point of destination, that we think it was material for the jury to be informed of what was the purchase price of such horse in the market where he was furnished, together with the cost of transportation to the point of destination, as evidence having some bearing upon his value. The question propounded did not necessarily relate to a matter of common knowledge within the possession of the jury, nor did it merely call for the conclusion of the witness as to a fact about which the jury, as well as the witness, could form an estimate; but it was a test of the accuracy of the witness's opinion, and his answer, if permitted to have gone to the jury, may have impressed them with the idea that either his opinion was entitled to little weight or that his estimate of value, based upon his opinion, was extravagant. The question should have been answered.

On the trial below the court admitted in evidence a certificate of registration stating that the horse "Carnegie" was registered as "Standard," and which purported to give his pedigree, as shown by the American Trotting Registry, which instrument was executed at Chicago, Illinois, and purported to be under the hand and seal of the registrar. The purpose of this evidence was to show that the horse in question had a value above that of horses generally, and was evidently considered by the jury as having some weight in establishing that fact. Among other objections urged to the introduction of the certificate was one to the effect that its execution had not been proven. The bill of exception states that the court admitted it in evidence in connection with the evidence of the witness Nasworthy, who testified in effect that the certificate in question would be recognized by horse men all over America as being an authentic registration of the horse's pedigree. It may be true that horsemen would recognize and act upon the certificate as authentic and as correctly stating the facts, but such general recognition would not supply the proof of execution when the certificate was called in question. The defendant was not a party to the certificate, which was issued by a third party who purports to be the keeper of the records of the American Trotting Registry. His evidence or that of any one else was not offered for the purpose of showing the existence of such a record, or who was its custodian and who could and would be authorized to give a certificate of its contents; nor was there any evidence whatever tending to prove the execution of the instrument under the rules of the common law as they are applicable here, and which should apply in determining the admissibility of the certificate, owing to the fact that we have no statute making the mere offer of such a document proof of its execution. The certificate should not have been admitted.

In overruling all of the remaining assignments of errors as not well taken, and without undertaking to give our reasons for so doing, we wish merely to say in reply to the suggestion of the appellant that the damages sought to be recovered are special, that this view can not be accepted by the court. In determining the intrinsic or market value of an animal, the kind and class to which he belongs, his qualities and his use and service for which he is fitted and to which he may be put are to be considered in arriving at his value; and we do not understand that these

elements are embraced solely within the term "special damages," only to be recovered under an allegation so designating them as such. The general averment of the loss of the market or reasonable value of the animal would allow a consideration by a jury of the elements pointed out. Of course, if the purpose was to show that the animal was to be entered in a certain race, or to be used under a certain contract for procreative service, the loss resulting through the negligence of the carrier, if depriving the plaintiff of the benefits to flow from these engagements, would be special damages. But the mere fact that the animals were of a superior class and valuable for breeding purposes, or generally fit for any other purpose for which they may be lawfully used, would not be elements for the loss of which the law would characterize as special damages. The rule of general damages would apply in such a case, based upon the loss or injury sustained to horses of that class, kind and qualities.

As there is no assignment of error complaining of the judgment of the court below in favor of the Gulf, Colorado & Santa Fe Railway Company, the judgment as to it will be affirmed.

For the errors pointed out, the judgment of the court below as against the Texas & Pacific Railway Company will be reversed and the cause remanded.

*Affirmed in part and reversed and remanded in part.*