**TEXAS PIPE LINE CO. v. SHEFFIELD et al.**

No. 1794.

Court of Civil Appeals of Texas. Waco.

Dec. 10, 1936.

H. L. Williford, of Fairfield, and John C. Jackson and J. H. Pipkin, both of Houston, for appellant.

Geppert, Geppert & Victery, of Teague, for appellees.

ALEXANDER, Justice.

Horace Sheffield and Roy Simmons brought this suit against the Texas Pipe Line Company for damages to cattle alleged to have been caused by reason of a leak in defendant's oil line about January 15, 1934, and another one about September 15, 1934. It was alleged that plaintiffs' cattle drank the oil and got it on their bodies and that this caused some of the cattle to die and others to lose flesh and to abort their calves. The verdict of the jury was favorable to plaintiffs and judgment was accordingly entered for $1,365. The defendant appealed.

■ The appellees sought damages not only for the decrease in the market value of the cows as the result of the injuries complained of, but also for the value of the unborn calves which the cows were caused to slink. The jury found that the market value of the cows was decreased $500 and that said cows were caused to slink twelve calves, which calves, if they had been born alive, would have been worth $510 at the date of their birth. The trial court included both of said items in the judgment rendered against defendant. This was error. The unborn calves could not in the nature of things have had a market value apart from the cows carrying them. Plaintiffs will be fully compensated by allowing them the difference in the market value of their cows in the condition that they were in immediately prior to their injury and their market value after the injury and after they had been caused to lose their calves. It would be too uncertain and speculative to undertake to allow appellees to recover the supposed value of the aborted calves at the time that they presumably would have been born alive but for the injury. Moreover, to allow the difference in the market value of the cows before and after the injury and also the value that the calves would have had if they had been born alive would be allowing double damages. Baker v. Mims, 14 Tex.Civ.App. 413, 37 S.W. 190; Missouri Pacific Ry. Co. v. Fagan, 72 Tex. 127, 9 S.W. 749, 2 L.R.A. 75, 13 Am.St. Rep. 776; N. Y., Lake Erie & Western Ry. Co. v. Estill, 147 U.S. 590, 13 S.Ct. 444, 37 L.Ed. 292; 2 Tex.Jur. 786; Lester v. Hawkins (Tex.Civ.App.) 181 S.W. 481, par. 9.

■ The appellees were allowed to recover damages in the amount of $65 for injuries to one cow named Miss Teague 69th and a like amount for injuries sustained by another cow named Miss Teague 83d. In this connection, the court submitted to the jury special issue No. 42 as follows: "Do you find from a preponderance of the evidence that plaintiffs owned cows Miss Teague 69 and Miss Teague 83 that drank oil which came from the leak in defendant's pipe line occurring September 15, 1934?" To which the jury answered, "Yes." Appellant objected to this issue on the ground that it was duplicitous and multifarious in that it submitted more than one question in the same issue. This objection should have been sustained. The interrogatory submitted to the jury not only the question as to whether the plaintiffs owned either, or both, of said cows, but whether or not either, or both, of them drank oil from the leak in question. The jury might have desired to answer that the plaintiffs owned one of the cows but not the other, or that they owned both of the cows but that neither of them drank oil from the leak, or that only one of them drank oil from the leak. They could not do so by an answer of yes or no in response to the entire issue. There were no other issues submitted to the jury as to whether or not either, or both, of said cows drank oil from the leak in question. The issue therefore was subject to the objections urged by appellants and said objections should have been sustained. 41 Tex.Jur. 1102; McKenzie Construction Co. v. Chanowsky (Tex.Civ.App.) 86 S.W.(2d) 480; Oil Well Supply Co. v. Jowell (Tex.Civ. App.) 48 S.W.(2d) 406.

■ The appellees were permitted to introduce in evidence certain purported certificates of registration from Hereford breeders' associations for the purpose of showing that the cattle involved in the lawsuit were registered Hereford cattle. This evidence was objected to because the certificates were hearsay and their authenticity and genuineness were not properly vouched for, and because said certificates were in effect ex parte statements of some unknown person not sworn to testify in the case. Under the authorities, it appears that this evidence should have been excluded. It appears to be the well-established rule in Texas that in the absence of evidence showing the genuineness and authenticity of such registration certificates, they are inadmissible. Austin & N. W. R. Co. v. Saunders, (Tex.Civ.App.) 26 S.W. 128; Texas & P. Ry. Co. v. Newsome & Williams, 44 Tex. Civ.App. 513, 98 S.W. 646; Panhandle & Santa Fe Ry. Co. v. Reynolds (Tex.Civ.

App.) 33 S.W.(2d) 249; Citizens' Rapid-Transit Co. v. Dew, 100 Tenn. 317, 45 S.W. 790, 40 L.R.A. 518, 66 Am.St.Rep. 754; 22 C.J. 242.

■■■ The leak in the pipe line, which occurred on January 15, 1934, damaged appellees' land, barn, and cattle. On January 25, 1934, appellees, for the sum of $300, executed and delivered to appellant a release, reading in part as follows:

"Received of the Texas Pipe Line Company the sum of $300.00 Three Hundred ......No/100......Dollars in full to date settlement of damages growing out of leak No. 1 Corsicana-Freestone 8″ line 1/15/34."

Appellant pleaded said release in bar of this action. The appellees alleged that the release was intended to cover only the damages sustained to the barn and land and not the damage to the cattle; that at the time of the settlement the extent of the damage to the cattle had not and could not be determined, and it was mutually understood that the release would not cover such damages. It was alleged that the words "to date" were inserted in the release at appellees' request after it had been prepared for the purpose of showing that it did not cover such damages to the cattle, and that if the release did not fully express the intention of the parties, it was because of their mutual mistake. The jury found that the release was not intended by the parties to include any damages to the cattle involved in the suit, and that the failure to state therein that it was not given for damages to cattle was a mutual mistake of both parties. The contract on its face appears to be plain and unambiguous and its terms are broad enough to include all damages to cattle that had accrued at the time of its execution. The evidence shows without dispute that the cattle had come in contact with the oil prior to the execution of the release, and consequently appellees' cause of action for the injuries so inflicted accrued immediately and prior to the execution of the release, even though the consequences of such injuries were not immediately apparent. Houston Water-Works v. Kennedy, 70 Tex. 233, 8 S.W. 36; Lyles v. Texas & N. O. Ry. Co., 73 Tex. 95, 11 S.W. 782. However, if it was in fact understood by the parties that the settlement was not intended to cover any damages to the cattle and by mutual mistake the release failed to so state, then such settlement would not constitute a bar to appellees' action. 10 Tex.Jur. 93. The evi-dence does not make it very clear as to whether the parties signed the release with full knowledge of its contents, or whether it was by mutual mistake that it did not contain a provision excluding the damages to the cattle. 10 Tex.Jur. 98. This feature of the case will likely be more fully developed on another trial.

On account of the errors hereinbefore pointed out, the judgment of the trial court is reversed and the cause is remanded for a new trial.