**LOWER RIO GRANDE VALLEY MID-WINTER FAIR ASS'N et al. v. NUNSTEDT et ux.**

**No. 10489.**

Court of Civil Appeals of Texas. San Antonio.

June 7, 1939.

Rehearing Denied Nov. 8, 1939.

Osce Fristoe and Carter & Stiernberg, all of Harlingen, for appellants.

McDaniel & Catlett, of McAllen, and J. I. Coursey, of Harlingen, for appellees.

MURRAY, Justice.

Ed Nunstedt, appellee, brought this suit against appellants, City of Harlingen, a municipal corporation, and Lower Rio Grande Valley Mid-Winter Fair Association, Inc., for damages resulting from personal injuries received by his wife, Ida Nunstedt, when a recent addition to a grandstand collapsed while she was witnessing an airplane and automobile crash stunt. show which was then being put on by one Rex Murphy, an independent contractor, or concessionaire, operating under a lease contract from the Fair Association.

The suit was originally also against Rex Murphy, but the trial court permitted the plaintiff to dismiss the cause as to Rex Murphy upon a showing that he was insolvent and a transient person, upon whom service could not be had after due diligence to do so.

Ida Nunstedt was on the recent addition to the grandstand when it collapsed and injured her. This recent addition to the grandstand was a platform joined to the north twenty-four feet of the grandstand and extending out in front of this north twenty-four feet of the grandstand. It seems that everyone entering or leaving the grandstand was compelled to pass over this recently constructed platform, as there was no other entrance to the grandstand available at the time of the crash stunt put on by Rex Murphy. This injury to Ida Nunstedt occurred at the fair held in December, 1936. It seems that the north twenty-four feet of the grandstand had been injured in the storm of 1933, and up until at least about a week before the injury occurred there was a wire netting thirty or thirty-six inches wide stretched across the grandstand to keep people from occupying this part of the grandstand. There is no evidence by whom or when this wire netting was taken down, or by whom or. when the recently constructed platform was built.

There is no evidence that the city officials or the directors of the Fair Association attempted to repair this north twenty-four feet of the grandstand, nor that either built the platform or took down the wire netting. There was no direct evidence that the City or the Fair Association did or did not inspect the north twenty-four feet of the grandstand.

The City did not pass any ordinance, resolution, or take any formal action authorizing the holding of the fair or the airplane stunt; there is no direct evidence that any of the City Commissioners knew that the fair or the airplane stunt was being held; there is an inference that the Mayor knew the fair was going on.

Appellee's theory evidently was that the City was conducting the fair through its chamber of commerce, although there was no showing of any formal action by the City Commission creating a chamber of commerce for the year 1936.

Appellee apparently attempts to hold the Fair Association liable on the theory that the Fair Association, as lessor, leased the

grandstand to Rex Murphy, an independent contractor and concessionaire, for the period of time from 3 o'clock p. m. to 5:30 p. m. on December 6th and 13th, 1936.

The case was submitted to the jury on special issues and such issues answered by the jury as follows:

"Special Issue No. 1.

"Do you find from a preponderance of the evidence that the Defendants failed to maintain the grandstand platform, upon which Plaintiff and his wife were crossing, in a reasonably safe condition at the time of the accident in question?

"Answer 'Yes' or 'No.'

"We, the Jury, answer Yes.

"Special Issue No. 2.

"If you have answered the foregoing question 'Yes,' then you will answer this question: Do you find from a preponderance of the evidence that such failure, if any, was negligence?

"Answer 'Yes' or 'No.'

"We, the Jury, answer Yes.

"Special Issue No. 3.

"Do you find from a preponderance of the evidence that such negligence, if any, was a proximate cause of the injuries, if any, sustained by the Plaintiff's wife, Ida Nunstedt?

"Answer 'Yes' or 'No.'

"We, the Jury, answer Yes.

"Special Issue No. 4.

"Do you find from a preponderance of the evidence that the defendants, immediately prior to the accident in question, failed to have the boards supporting the Southwest end of the grandstand platform in question securely fastened so as to prevent the same from giving way and falling to the ground from the weight of persons reasonably expected would cross or gather thereon during the exhibition given thereat?

"Answer 'Yes' or 'No.'

"We, the Jury, answer Yes.

"Special Issue No. 5.

"If, and only if, you have answered the last preceding question 'Yes,' then do you find from a preponderance of the evidence that such failure, if any, was negligence?

"Answer 'Yes' or 'No.'

"We, the Jury, answer Yes.

"Special Issue No. 6.

"Do you find from a preponderance of the evidence that such negligence, if any,

was a proximate cause of the injuries, if any, sustained by the Plaintiff's wife, Ida Nunstedt?

"Answer 'Yes' or 'No.'

"We, the Jury, answer Yes.

"Special Issue No. 7.

"Do you find from a preponderance of the evidence that the Defendants, at and immediately prior to the time of the accident in question, failed to have the supporting structure, to which the platform on which Plaintiff and his wife were standing was attached maintained at sufficient strength to prevent the breaking, spreading, giving away and falling thereof from the weight of persons reasonably expected to use the same?

"Answer 'Yes' or 'No.'

"We, the Jury, answer Yes.

"Special Issue No. 8.

"If you have answered the foregoing question 'Yes,' then you will answer this question: Do you find from a preponderance of the evidence that such failure, if any, was negligence?

"Answer 'Yes' or 'No.'

"We, the Jury, answer Yes.

"Special Issue No. 9.

"Do you find from a preponderance of the evidence that such negligence, if any, was the proximate cause of the injuries, if any, sustained by the Plaintiff's wife, Ida Nunstedt?

"Answer 'Yes' or 'No.'

"We, the Jury, answer Yes.

"Special Issue No. 10.

"Do you find from a preponderance of the evidence that the Defendants permitted the Grandstand platform to be used by the public and the Plaintiff and his wife on this occasion without making the same reasonably safe for such purpose?

"This question you will answer 'Yes' or 'No,' as you may believe from the evidence. We, the Jury, answer Yes.

"Special Issue No. 11.

"If you have answered the foregoing question 'Yes,' then you will answer this question: Do you find from a preponderance of the evidence that such failure, if any, was negligence?

"Answer 'Yes' or 'No.'

"We, the Jury, answer Yes.

"Special Issue No. 12.

"Do you find from a preponderance of the evidence that such negligence, if any,

was the proximate cause of the injuries, if any, sustained by the Plaintiff's wife, Ida Nunstedt?

"Answer 'Yes' or 'No.'

"We, the Jury, answer Yes.

### "Special Issue No. 13.

"Do you find from a preponderance of the evidence that the Defendants invited the Plaintiff and his wife to come upon and in said platform and grandstand upon the occasion in question, without first making same reasonably safe for such visit?

"Answer 'Yes' or 'No.'

"We, the Jury, answer Yes.

### "Special Issue No. 14.

"If you have answered the foregoing question 'Yes,' then you will answer this question: Do you find from a preponderance of the evidence that such failure, if any, was negligence?

"Answer 'Yes' or 'No.'

"We, the Jury, answer Yes.

### "Special Issue No. 15.

"Do you find from a preponderance of the evidence that such negligence, if any, was the proximate cause of the injuries, if any, sustained by the Plaintiff's wife, Ida Nunstedt?

"Answer 'Yes' or 'No.'

"We, the Jury, answer Yes.

### "Special Issue No. 16.

"Do you find from a preponderance of the evidence that the Defendants failed to make a reasonable inspection of the Grandstand and platform at the Northeast corner of the Race Track Grandstand prior to the afternoon of December 6, 1936, to determine whether such platform was reasonably safe for persons and spectators attending the exhibitions given thereat to walk on and cross over and upon, in order to enter and leave said Grandstand, and in order to witness such exhibitions thereupon?

"Answer 'Yes' or 'No.'

"We, the Jury, answer Yes.

### "Special Issue No. 17.

"If you have answered the foregoing question 'Yes', then you will answer this question: Would a reasonable inspection of said platform and grandstand have disclosed the unsafe condition thereof?

"Answer 'Yes' or 'No.'

"We, the Jury, answer Yes.

### "Special Issue No. 18.

"If you have answered the last preceding two questions in the affirmative, then you will answer this question: Do you find from a preponderance of the evidence that such failure to inspect, if any, was negligence?

"Answer 'Yes' or 'No.'

"We, the Jury, answer Yes.

### "Special Issue No. 19.

"Do you find from a preponderance of the evidence that such negligence, if any, was the proximate cause of the injuries, if any, sustained by the Plaintiff's wife?

"Answer 'Yes' or 'No.'

"We, the Jury, answer Yes.

### "Special Issue No. 20.

"Do you find from a preponderance of the evidence that the collapse of the platform in question was not due to an unavoidable accident?

"Answer 'Yes, it was not due to an unavoidable accident,' or 'No, it was due to an unavoidable accident.'

"We, the Jury, answer, Yes, it was not due to an unavoidable accident.

### "Special Issue No. 21.

"(a) Do you find from a preponderance of the evidence that Plaintiff and his wife, Ida Nunstedt, went on the platform in question immediately after the airplane crashed, with a larger crowd of people than said platform could reasonably have been expected to accommodate?

"Answer 'Yes' or 'No.'

"We, the Jury, answer No.

"(b) If you have answered the last question 'Yes', then: Do you find from a preponderance of the evidence that Mr. and Mrs. Nunstedt, in going on the platform in question immediately after the airplane crashed with a larger crowd of people than said platform could reasonably have been expected to accommodate, failed to use that degree of care for their own safety which a person of ordinary prudence would have used under the same or similar circumstances?

"Answer 'Yes' or 'No.' We, the Jury, answer ———.

"(c) If you have answered the last question 'Yes,' then: Do you find from a preponderance of the evidence that such failure, if any, proximately contributed to

cause the collapse of the platform in question?

"Answer 'Yes' or 'No.' We, the Jury, answer ————.

"Special Issue No. 22.

"What sum of money, if paid now, do you find from a preponderance of the evidence, will fairly compensate the Plaintiff for such injuries, if any, sustained by Plaintiff's wife, as the proximate result, if any of the negligence of the Defendants, if any?

"Answer by stating amount, if any, in dollars and cents.

"We, the Jury, answer $12,500.00."

Upon these findings judgment was entered in favor of Ed Nunstedt in the sum of $12,134.79, being the sum found by the jury less certain sums previously paid by the Fair Association. The City of Harlingen and the Lower Rio Grande Valley Mid-Winter Fair Association, Inc., have prosecuted this appeal.

■ It will be noted that all the questions refer to the defendants jointly, and asked whether the defendants did or failed to do certain things. The questions were followed by an instruction to answer "yes" or "no." The attorneys for appellants attempted to argue to the jury that in view of the form of the questions and the "yes" or "no" answers required, that before they could answer such an issue "yes" they would have to find that both of the appellants had done or failed to do the thing inquired about. The trial judge refused to permit such arguments and stated in the presence and hearing of the jury that the theory upon which he was trying the case was that both of appellants were one and the same person. Certainly the City of Harlingen, represented by its mayor and city commissioners, and the Fair Association, represented by its board of directors, were not, as a matter of law, one and the same person. The City might be responsible for the acts of the Fair Association on some theory of agency, but certainly they were not one and the same person.

It is therefore apparent that such questions were duplicitous and did not submit a separate and distinct issue of fact as required by Art. 2189, R.C.S.1925. See also Gulf States Utilities Co. v. Wooldridge, Tex.Civ.App., 90 S.W.2d 325; Pageway Coaches, Inc. v. Bransford, Tex.Civ.App., 71 S.W.2d 561; Texas Pipe Line Co. v. Sheffield, Tex.Civ.App., 99 S.W.2d 684.

■ There is further confusion in the issues in that the jury was asked if a certain failure was negligence when the jury had not found there had been any failure. To illustrate, by issue No. 13, the jury were asked if the defendants invited the plaintiff's wife to come upon the grandstand, and by subsidiary issue No. 14, if such "failure" was negligence. Such questions are meaningless and could have only confused the jury and have caused them to make meaningless findings.

■ It seems that the liability of the City could only be based upon the theory that it permitted its grandstand to be used without making a reasonable inspection to ascertain if the grandstand was in a good condition and safe for the public to use. As there was no direct evidence that either of appellants failed to make such inspection, the question of whether or not an inspection would have disclosed the unsafe condition of the platform became an all important matter. If an inspection would have disclosed the unsafe condition then it might be inferred that no inspection was made. This matter was inquired about in special issue No. 17, reading as follows: "Would a reasonable inspection of said platform and grandstand have disclosed the unsafe condition thereof?" Neither in the issue nor in any instruction accompanying this issue was an attempt made to place the burden of proof. It is unnecessary to cite authorities to establish the fact that such failure to place the burden of proof was error.

■ Appellee contends that the evidence was undisputed establishing the fact that a reasonable inspection would have disclosed the unsafe condition of the platform. In view of the fact that it is shown that the platform was recently constructed and not even in existence a week or ten days before the accident, when the witness Robinson found the dry rot condition under the old grandstand, we cannot say that the evidence is conclusive that a reasonable inspection would have disclosed the unsafe condition of the platform.

This case involves, in many respects, the same facts and issues discussed in Scroggins v. City of Harlingen, 131 Tex. 237, 112 S.W.2d 1035, 114 S.W.2d 853. In view of the fact that the judgment herein must be reversed for the errors above pointed out, we will not discuss other questions raised, but simply refer to the above cause,

where most of the general principles involved have been fully determined by the Supreme Court of this State.

Reversed and remanded.