## KLEIN, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

### St. Louis Court of Appeals, March 27, 1906.

1. **PRACTICE: Instruction: Assuming Fact.** An instruction to the jury which assumes the existence of a fact concerning which the evidence is conflicting is erroneous.

2. **DOGS: Measure of Damages.** In an action for damages caused to plaintiff by the destruction of his dog, the measure of his damages is the pecuniary value of the dog, and an instruction which authorized the jury to take into consideration in estimating the plaintiff's damages his loss of the company of the dog and of the amusement and pleasure the dog afforded him, was erroneous.

3. ————: **Street Railways: Duty to Look Out.** A motorman in charge of a street car is not bound to stop his car in order to avoid injuring a dog which may be upon the track, unless there is something in the dog's actions to indicate that he is unable to get off the track or unaware of the approach of the car, because the known character of dogs is such that they usually look out for their own safety.

4. **RIGHTS OF DOGS TO PUBLIC HIGHWAY: License Tax.** The fact that the owner of a dog has paid a license tax on him does not give him any greater liberty to run upon a street car track, or place the owner in a better position to recover damages for his death in being run over by a street car, than would exist if the license tax had not been paid.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel G. Taylor,* Judge.

REVERSED AND REMANDED.

*Boyle & Priest, George W. Easley* and *Edward T. Miller* for appellant.

(1) The court erred in giving plaintiff's instruction No. 2. The instruction is erroneous in assuming that the dog was on the track. Comer v. Taylor, 82 Mo. 341; Stone v. Hunt, 94 Mo. 475, 7 S. W. 431; Railway v. Stock Yards, 120 Mo. 541, 25 S. W. 399; Blashfield, Instructions to Juries, sec. 29. (2) The court erred in giving plaintiff's instruction No. 3. Fisher v. Lead Co., 156 Mo. 479, 56 S. W. 1107; Blashfield, Instructions to Juries, secs. 86 and 92. This instruction declares that plaintiff's dog was personal property, and had a right to be on a public highway if it was licensed.

*J. Carter Carstens* for respondent.

The demurrer to the evidence was properly overruled, and the peremptory instruction was properly refused. Gibson v. Zimmerman, 27 Mo. App. 90; Baum v. Fryrear, 85 Mo. 151; Routsong v. Railroad, 45 Mo. 236; Rine v. Railway, 100 Mo. 228, 12 S. W. 640.

STATEMENT.—Suit was commenced before a justice of the peace, in the city of St. Louis, on the following statement:

"The plaintiff states that defendant is a corporation duly organized under the laws of the State of Missouri, and that it was such at all times hereinafter mentioned, and the plaintiff for his cause of action states, that the defendant company does now and at all of the times mentioned in this petition did operate and run an electric street railway in a direction running from north to the

south being a double track for going and coming towards the center of the city of St. Louis, Missouri, and that these tracks thus running in a northwardly and southwardly direction are run on and over the street or avenue in the southern portion of the city of St. Louis, Missouri, known as California avenue, and that said avenue and tracks run in a southwardly direction south of Russell avenue and are intersected by Ann street and also by Accomac street a short distance south of said Russell avenue.

"Plaintiff further states that on Friday, May 23rd of 1902, he was the lawful owner of a trained hunting dog, called 'Sport,' being an Irish setter, and which said dog was by plaintiff trained in the art of hunting and other sports, viz., as a family dog, being with great care and skilled training brought to a standard of human intelligence, and said dog being reasonably worth the sum of $300.

"That on the said date of May 23, 1902, while said dog was then and there sitting upon the track of the said defendant company pointing at certain birds being then and there situated on said track, being the eastern of the double track north of Accomac street and south of Ann street and that while said dog was so seated pointing at certain birds, a car being then and belonging to the defendant company being then and there in charge of and controlled by the motorman and conductor then and there in the employ of defendant and acting within the scope of their duty were running and operating said car at an unreasonable and excessive rate of speed on the eastern track of said double tracks in a northwardly direction and while said employees were at about — o'clock of said May 23, 1902, coming toward said dog they were operating said car in such an unlawful and unskillful, careless and negligent (and wanton) manner as to pay no attention to the danger of said dog but continued to and toward where the dog had been sitting and was now sitting and carelessly and negligently (and

wantonly) run said electric car into and over said dog, without effort to stop the same, instantly killing the same without using that effort to avoid said killing of said dog, or without using that care which said employees of defendant should have used to stop said car and avoid said killing. All to the damage of the plaintiff in the sum of $300 actual damages (and $200 punitive damages).

"Wherefore the plaintiff prays that this honorable court may render judgment in favor of the plaintiff and against the defendant in the sum of $300 actual damages (and the further sum of $200 punitive damages as a punishment for the defendant's unlawful conduct) and for plaintiff's costs herein."

From the judgment rendered by the justice, the cause was appealed to the circuit court, where on a trial *de novo* plaintiff recovered judgment for two hundred dollars, from which the defendant appealed to the Supreme Court. The latter court transferred the case to this court.

The plaintiff's evidence tends to show that the dog, "Sport," was an Irish setter and was possessed with unusual intelligence; that he was well trained as a bird dog, could play the piano, and at the command of his master would go and fetch things about the house and carry a basket to and from the market, and do many other intelligent things that the ordinary dog is incapable of being trained to do. As to the facts in regard to the manner in which "Sport" met his death, plaintiff's evidence tends to show that California avenue runs north and south, that defendant has a double railroad track in the center of the avenue and cars traveling north run on the east track; that the plaintiff's residence is situated on the northeast corner of Accomac street and California avenue, facing south; that between plaintiff's residence and California avenue there is a vacant lot thirty-five feet wide, extending northwestwardly to an alley. On this lot was a growth of weeds and grass. "Sport," on

the day he was killed, was playing near his master in
the front yard, when some birds flew over the vacant lot,
going northwardly. The dog scented the birds and pur-
sued them in their flight. Plaintiff whistled to him to
come back but he did not heed, and continued to run
northwardly across the vacant lot on to California aven-
ue. He stopped on the east rail of the east track and point-
ed to the flock of birds. Plaintiff again whistled to him
but he failed to respond, and a car traveling north and
running at a rapid speed ran over the dog and cut him in
two. Plaintiff's evidence tends to show that the gong
was not sounded and no effort was made to stop the car
or check its speed to avoid running over the dog; and
that the dog could have been seen standing on the track
for at least three hundred feet to the south.

There is no evidence in what time or space the car
could have been stopped.

Defendant's evidence tends to show that "Sport"
was so intent in his pursuit of the birds that he ran and
plunged in front of the hind trucks of the car and was
run over. The motorman in charge of the car testified
that he did not see the dog at all.

The court gave the following instructions for the
plaintiff:

"2. The jury are instructed that the defendant's
servants are bound to make such efforts to stop the car
when animals are upon the track as they can do by the
exercise of ordinary care with the appliances at hand
and with safety to the car and passengers. If you find
from the evidence that the motorman saw the dog, or
could have seen the dog, if he had used ordinary precau-
tion, or could, by the exercise of ordinary care have frigh-
tened the dog away or stopped the car in time to have
avoided killing said dog, but failed to do so, then the
defendant is liable for the killing of said dog and for
such damages as may result to plaintiff by reason of said
killing.

"3. The jury are further instructed that in law a

dog is considered and regarded as personal property the same as any other property that one might own, and that if the plaintiff had secured a license for said dog, which it was admitted he had secured, that the dog if found on a public highway had a right to be there."

Defendant moved for a compulsory nonsuit; also for the following instruction, both of which the court denied:

"3.   The court instructs the jury that the law did not impose upon defendant's agent in charge of the operation of the car a duty to look out for dogs upon or near the track of its line of street railway; and if you find from the evidence that the motorman failed to look out for or to see the dog on or near the track, such failure does not constitute such negligence as will entitle plaintiff to recover in this action."

The court gave an instruction to the jury for defendant which, in effect, withdrew from their consideration the evidence in respect to the speed of the car.

BLAND, P. J. (after stating the facts).—I.   Instruction No. 2, given for plaintiff is erroneous for the reason it assumes the dog was on the track sometime before he was run over.   That he was sitting on the track, is contradicted by the defendant's witness, a police officer, who testified that the dog plunged under the car in front of the hind trucks; and the motorman testified that he did not see the dog at all.   The instruction wholly ignores this evidence.   It is also erroneous in that it does not state the proper measure of plaintiff's damages, which is the actual value of the dog.   Plaintiff's evidence shows that he prized the dog very highly and took pleasure in its company and was proud of the smart things it would do.   In view of this evidence, the jury might (under the instruction) very well have taken into consideration, in estimating the damages resulting to plaintiff, his loss of the dog's company and the deprivation of the amusement and pleasure the dog afforded, as well

as the dog's pecuniary value. We think the instruction is also erroneous for the reason it declares that it was the duty of the motorman to keep a watch for dogs on the track. We are unwilling to give our assent to this doctrine. In this State, a steam railroad company, in running its cars at places where its tracks are not fenced and where cattle are liable to stray upon its track, is under the duty to keep a reasonable lookout for such animals and to use reasonable care to avoid injuring them. (Hill v. Railway, 49 Mo. App. 520, affirmed in 121 Mo. 477, 26 S. W. 576) but dogs, while declared to be personal property by statute, and are, in a sense, domestic animals (Wilcox v. State, 101 Ga. 563; Hurley v. State, 30 Texas App. 333) are, in their nature and habits, not at all like cattle running on the range. Dogs, when at large are always on the watch for their own safety. They are quick in motion, active and swift, and so alert that they ordinarily avoid contact with running trains and cars, hence, there is no reason to apprehend that a dog, seen at some distance, on a railroad track in front of a car would remain on it and be run over, and unless there is something about the dog's actions and movements, or his inaction, to indicate to the motorman that he is either unable to get off the track or oblivious to the approach of the car, the motorman is under no duty to stop the car to avoid injuring him. On the other hand, if the motorman has good reason to believe that the dog will not or cannot, for any reason, get off the track in time to avoid being run over, he is under the duty to use ordinary care to frighten the dog off, or check or stop the car to avoid hurting him. Defendant's refused instruction is in accord with these views and should have been given.

2. We do not think that because "Sport" wore a collar, showing that his master had paid a license tax on his head, that the dog thereby was entitled to the freedom of the city. His collar conferred upon him no greater privileges than are enjoyed by other dogs not thus decorated, except to exempt him from the raids of the

dog-catcher, and the instruction, that plaintiff's dog was licensed to roam at will upon the streets, alleys and vacant lots of the city, was misleading, if not erroneous.

The judgment is reversed and the cause remanded. All concur.