## SANDRI v. BYRAM et al.

Circuit Court of Appeals, Sixth Circuit. February 15, 1929.

No. 5054.

August J. Waffen, of Iron River, Mich., for plaintiff in error.

Leigh C. Caswell, of Crystal Falls, Mich., for defendants in error.

Before MOORMAN, MACK, and HICKS, Circuit Judges.

HICKS, Circuit Judge. The plaintiff in error, herein called the plaintiff, Joseph Sandri, administrator of the estate of Wazino Sandri, sued Byram, Potter, and Brundage, receivers of the Chicago, Milwaukee & St. Paul Railway Company, for damages for the alleged wrongful death of his intestate. On the trial, at the close of the evidence, a motion by defendants for a directed verdict was sustained. Plaintiff sued out a writ of error. The case was brought under and falls within Federal Employers' Liability Act, April 22, 1908, c. 149, § 1, 35 Stat. 65 (title 45, c. 2, § 51, U. S. C. [45 USCA § 51]).

The gravamen of the declaration is that defendant's section foreman, one Dickinson, operated a gasoline motorcar, commonly called a "pede," over a public highway crossing in such close proximity to an approaching automobile as to cause the deceased, riding on the pede in company with other members of the section crew, to believe himself in impending peril, and that in an effort to escape therefrom he jumped, was struck by the automobile, and killed.

There is no substantial conflict in the testimony. The determinative evidence is that state highway M–69, running north and south, intersects defendant's railroad line. The deceased was a member of a section crew being carried northeastwardly toward the intersection on a gasoline motorcar, or pede. The motorcar, seven feet long, also carried some timbers which projected rearwardly a distance variously estimated at from three to seven feet. It was being driven by Dickinson, the section foreman. One Hugo Finstrom, in company with Victor West, was driving an automobile along the highway southwardly toward the intersection. The drivers saw each other, and each reduced speed as they approached. The evidence tends to show that, when the pede had arrived at a point within the limits of the highway, and about five feet from the cross-

ing planks, it was under control and could have been stopped within two feet. There is also evidence tending to show that, with the automobile approaching at the rate of about 12 or 15 miles an hour and when it was about 15 feet from the pede, Dickinson speeded up the pede and crossed the highway at about 10 or 12 miles an hour.

The deceased, 17 years old, who had been working about a month as a section man under Dickinson, this being his first employment as such, was seated on the pede toward the front end, and there is evidence tending to show that, when the automobile was about 12 feet from the pede and still approaching at 12 or 15 miles per hour, and as the front of the pede was entering the northern half of the highway, the deceased swung to the right, jumped, landed about the center of the road on his hands and knees, made an effort to crawl to the left side of the road, and while undertaking to get up on his knees was struck by the left front wheel of the automobile and killed. Before stopping, Finstrom swerved his automobile to the right and entered upon the crossing, but with the right wheels of the automobile off the crossing planks. There is some controversy in the record as to whether he turned to the right to avoid striking the deceased or the projecting timbers on the pede. Whether for either cause, he in fact cleared the pede. If the deceased had not jumped, he would not have been killed; but it is clear that he jumped to ecsape from what appeared to him as a perilous situation. This apparent danger was caused by the act of Dickinson, or at least by the concurrent acts of Dickinson and Finstrom, as above indicated.

■ But driving the pede over the crossing was not of itself evidence of negligence upon the part of the defendant. Before plaintiff was entitled to have the case go to the jury, it was his duty to introduce substantive evidence showing that Dickinson's act was negligent; that is, that he did not exercise due care in the operation of the pede. If, after a survey of the evidence, and after giving effect to every inference to be fairly or reasonably drawn from it in plaintiff's favor, there is no substantial evidence of negligence, the case is one for the judge. But if, upon a consideration of all the proven facts and circumstances, together with all proper inferences and deductions therefrom, reasonable men might fairly differ upon the vital point as to whether Dickinson was in the exercise of due care, then the question becomes one for the jury. These are elementary principles and need no citations of

authority. Tested thereby, we conclude that the motion for a directed verdict should have been overruled. Dickinson was not required to stop the pede upon seeing the automobile approach. He had the right to proceed, and therefore the right to assume that the driver of the automobile would stop. However, the automobile did not stop, and if and when a collision became probable it was Dickinson's duty, in the exercise of reasonable care, to stop the pede and avoid the collision. Kansas City, C. & S. Ry. Co. v. Shoemaker, 249 F. 458, 459 (C. C. A. 8); St. Louis & S. F. R. Co. v. Summers, 173 F. 358, 359 (C. C. A. 8); Hart v. Northern Pac. Ry. Co. (C. C. A.) 196 F. 181; Continental Improvement Co. v. Stead, 95 U. S. 161, 168, 24 L. Ed. 403, 405; Iowa Central R. Co. v. Walker, 203 F. 685, 687 (C. C. A. 8).

If a collision was probable, the law, out of regard for the safety of the men on the pede, did not permit Dickinson to take a chance, and upon the point as to whether there was such probability fair-minded men might reasonably draw different conclusions. Upon this vital issue, plaintiff had the right to have considered by the jury the distance the pede was from the crossing planks, the distance the automobile was from the pede, the fact that the automobile was approaching, and its rate of speed, the evidence tending to show the necessity for the sudden speeding up of the pede to make the crossing, the rate at which it increased its speed, the narrow margin by which the rear of the pede cleared the front of the automobile, as well as the narrow margin by which the automobile cleared the rear of the pede, along with all other proven circumstances. The manifestations of alarm by the deceased, as well as the lack of such manifestations by other members of the crew, were likewise relevant upon the question of whether there was a situation of impending danger.

■ The fact that, if deceased had remained on the pede, he would have been saved, is not determinative. The vital question is: Did he jump to escape what would have seemed, to an ordinarily prudent person, situated as he was, an impending peril, caused by the negligence of Dickinson? If he did, the chain of causation leading from Dickinson's act to his death is not broken by decedent's choice of an unsafe course in an emergency. L. & N. R. Co. v. Wilson, 188 F. 417, 420 (C. C. A. 6); Erie R. Co. v. Schomer, 171 F. 798, 804 (C. C. A. 6); Erie R. Co. v. Moore, 113 F. 269, 272 (C. C. A. 6); Cowen v. Ray, 108 F. 320, 324 (C. C. A. 7). But of course, if his death was proximately

caused by his own independent act in jumping when a reasonably prudent person in his situation would not have jumped, then his death could not be attributed to the defendant, and this likewise raises a jury question to be determined upon a consideration of all the evidence, and especially the circumstances in which he suddenly found himself, together with his age and experience. What is said here is not meant as an indication of what the verdict of the jury should be. We simply hold that there is sufficient evidence for consideration by the jury.

The judgment is reversed, and the case remanded for further proceedings in accordance.