JERRY HOSKINS

*vs.*

THE BANGOR AND AROOSTOOK RAILROAD COMPANY.

Piscataquis. Opinion, November 24, 1937.

*Durgin & Villani,*
*Fellows & Fellows,* for plaintiff.
*Henry J. Hart,*
*Frank P. Ayer,*
*Perkins & Weeks,* for defendant.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

STURGIS, J. The plaintiff, a carpenter in the employ of The Bangor and Aroostook Railroad Company, brings this action to recover damages for injuries received on October 18, 1934, through the derailment of a gasoline-propelled section car on which he was riding from Schoodic to West Sebois to get material for repairs he was making on railroad property. It was proved and conceded at the trial that the defendant Railroad Company was a nonassenting large employer under the Workmen's Compensation Act and the defenses of contributory negligence of the employee, negligence of a fellow servant and assumption of risk were properly denied. R. S., Chap. 55, Sec. 3, see Sec. 4 as amended by P. L. 1931, Chap. 225, Sec. 4. It appearing that the plaintiff's employment was purely intrastate, counts and pleadings under the Federal Employers' Liability Act, 35 U. S. Stat. at L. 65, Chap. 149, were disregarded. The case was submitted to the jury on the single issue of whether the negligence of the driver of the section car was the proximate cause of the plaintiff's injury. The jury having returned a verdict for the plaintiff for $9550 the Railroad Company files a general motion for a new trial on the ground that liability is not established and the award of damages is grossly excessive.

The evidence, admitted without objection, tends to show that the section car in which the plaintiff rode at the time of his accident was equipped with sixteen-inch flanged wheels in no way protected by guards, a platform body and a raised seat divided lengthwise by an iron rail. It was operated by Roland Tweedie, acting foreman of the section, who was seated on the left side facing diagonally forward in a westerly direction. Another sectionman faced to the rear, and the plaintiff, sitting on the right side with his back to the center, had a quartering view, as it is termed, forward and easterly of the track. As the car, which left Schoodic right after the lunch hour, approached Packard's Siding, an intermediate flag station, and was about five hundred feet away, it was slowed down for a switch but speeded up again and driven on towards the station at a rate of from twenty-five to thirty miles an hour. Suddenly, a rather small black and white dog came leaping and barking on to the track in front of the section car, derailing it and throwing the plaintiff and the sectionman between the rails. The driver jumped and landed safely on the ground, the car continuing on on the soft roadbed some little distance and until the engine stalled.

There was evidence, apparently credible and uncontradicted, which warranted the jury in finding that the dog had come from a house located about fifty feet west of the track, ran barking and leaping diagonally across a lawn, down into a shallow ditch and, without stopping, directly on to the track; also that, although the dog's approach was at all times in plain view of the section foreman, he did not hear it barking or see it until it was about six feet to the left and four feet in front of the section car, and then had no opportunity to adequately apply brakes, slow the car or avoid a collision and the resulting derailment. The foreman was fully acquainted with the operation of the section car and had repeatedly used it in his work. He admits that he was fully aware that if a dog got on the track in front of the car it might cause trouble, if he had seen the dog coming rapidly towards the track he would have slowed up or stopped and that would have avoided a derailment, and had he been looking in the direction from which it came he probably would have seen it coming over the rise back of the ditch and some little distance from the track as there was nothing to obstruct his view for several hundred feet back down the track.

Rules of the Company, introduced in evidence, require operators of motor section cars to run at a speed not greater than twenty miles per hour, carefully watch the track for obstructions and keep the car under full control past stations and at other places where they may be required to stop quickly. Violation of analogous safety rules has been held to be evidence tending to show negligence. *Stevens* v. *Boston Elevated Railway*, 184 Mass., 476, 69 N. E., 338 and cases cited. If violation of these rules were not in the case, however, the proven facts warrant the finding of negligence. The foreman's failure to see the dog coming towards and upon the track in time to reduce the excessive speed of his car and bring it and keep it under control so that the derailment could be avoided was clearly a proximate cause of the accident which can only be attributed to his careless inattention, which spells negligence. It was his duty to see that which was open and apparent, take knowledge of obvious dangers and govern himself suitably. *Callahan* v. *Bridges Sons*, 128 Me., 346, 147 A., 423; *Gregware* v. *Poliquin*, 135 Me., 139, 190 A.,,811. With the fellow servant rule abrogated by the Workmen's Compensation Act, the Railroad Company must be held responsible for its foreman's negligence and charged with a breach of its duty to use reasonable care in transporting the plaintiff, not as a passenger but as an employee, to the place of his labors. *Birmingham Ry. L. & P. Co.* v. *Sawyer*, 156 Ala., 199, 47 So., 67; *St. Louis I. M. & S. Ry. Co.* v. *Harmon*, 85 Ark., 503; 109 S. W., 295; *St. Clair* v. *St. L. & S. F. Ry. Co.*, 122 Mo. A., 519, 99 S. W., 755; 39 Corpus Juris 283. Cases decided on very similar facts and analogous principles of law are *Sands, Receiver* v. *Linch*, 122 Ark., 93, 182 S. W., 561; *Petty* v. *A. & B. Air-Line Ry. Co.*, 132 Ga., 153, 63 S. E., 817; *Atchison T. & S. F. R. Co.* v. *Molone*, 81 Okla., 193, 197 P., 164.

The verdict can not be set aside because the declaration lacks allegations of the negligence relied upon before the jury and on the briefs. The case was tried and is here argued on the theory that the negligence of the defendant's foreman in not seeing the dog coming on to the track and taking due precautions to prevent a derailment of the section car was properly pleaded and evidence on that issue was admitted without objection. All necessary amendments must be considered here as duly made and allowed. *Burner* v. *Jordan Fam-*

*ily Laundry,* 122 Me., 47, 118 A., 722 ; *Clapp* v. *C. C. P. & L. Co.,* 121 Me., 356, 117 A., 307 ; *Wyman* v. *American Shoe Finding Company,* 106 Me., 263, 76 A., 483.

The damages awarded, however, were clearly excessive. The plaintiff states that when he was thrown from the section car he struck on his head, was rendered unconscious, taken to a hospital and did not regain his senses for several days. He suffered pains in the neck and shoulders, stayed at the hospital three weeks and remained at home until the middle of the following January. He then resumed his employment with the Railroad Company, stayed more than a year, but was finally discharged and has not since had work. In good health before his accident, he now claims some impairment of vision, continued pain in head and shoulders and frequent attacks of dizziness. He admits, however, that when he returned to his job after the accident, he was able and willing to do the work he had done in previous years, but objected to and refused to take on additional work, which he was called upon to perform. He was and had been a foreman carpenter and his wages were $160 a month. He drew the same amount during the period he worked after the accident. The bills of the hospital and the physicians who attended him having been paid by the Railroad Company, he shows personal expenditures of $208 for x-rays and osteopathic and eye treatment, and loss of wages for the three months immediately following the accident.

The plaintiff's wife confirms his claim of pain and suffering immediately following his injuries and continued discomfort in the head and shoulders but, stating that her husband came home on numerous occasions suffering from dizziness and headaches while he was employed the last time by the Railroad Company, admits that he worked regularly there as a general rule and knows of no deductions in his pay roll for loss of time. His family physician reports that the plaintiff has a large triangular scar in the region of his right forehead and another scar down and across his left cheek. It is his opinion that the plaintiff has suffered an impairment of his left eye through intracranial disturbances caused by the accident which is likely to be permanent but has been corrected by glasses. This physician also finds a slight deafness but has no fixed opinion as to its cause. Although several other physicians treated

and examined the plaintiff, they do not appear as witnesses and their diagnoses and opinions are unknown.

It is undoubtedly true that the plaintiff Hoskins has been out of work and unable to find profitable employment since he was discharged by the Railroad Company, but there is no evidence of probative value sustaining the claim that this loss of earning capacity can be attributed to the injuries which he received through the negligence of the defendant's foreman. It is apparently due to other independent causes for which his employer is not liable, at least in this action. His pain and suffering, past, present and future, the expenditures and actual loss of wages, and such continued impairment as is shown do not entitle him to the liberal award allowed him. We are convinced that error, if not sympathy and prejudice, prompted the jury to disregard the evidence and the law of damages governing the case.

The liability of the defendant being clearly established, the case must be sent back for a new trial on damages only and the general motion sustained accordingly.

*Motion sustained.*
*New trial on damages only.*