JOHN M. LLOYD v. ALTON RAILROAD COMPANY, a Corporation, Appellant.—159 S. W. (2d) 267.

Division One, December 12, 1941.

Rehearing Denied, February 26, 1942.

*Charles M. Miller* for defendant and appellant.

*Charno & Drummond, John A. McGuire* and *Ira B. Burns* for respondent.

1224

DALTON, C.—Action for damages for $50,000 under the Federal Employers' Liability Act (45 U. S. C. A., secs. 51-59) on account of personal injuries alleged to have been sustained by plaintiff by reason of defendant's negligence in the operation of a railroad gasoline motorcar. The jury found for defendant, but a new trial was granted on account of error in giving instructions "C" and "H,"

requested by defendant. Defendant has appealed, and contends (1) that its peremptory instruction should have been given as requested at the close of all the evidence; and (2) that instructions "C" and "H" correctly declare the law.

Although several grounds of negligence were alleged in the petition, the only one submitted was the negligent failure of the operator to slacken the speed of or stop the motorcar upon which plaintiff was riding, and, thereby, avoid a collision with a dog, the derailment of the car and the injury to plaintiff. Plaintiff's principal instruction, among other things, required the jury to find (1) "that the operator of said car saw said dog as it entered upon said right of way and proceeded toward said track;" (2) "that its position, actions and movements at that time and place were such as to suggest to a reasonably prudent person situated as was the operator of said motorcar . . . that there was a reasonable probability that said dog would come into a position on defendant's tracks or in such close proximity thereto that it would be run into and struck by said motorcar . . . and thereby endanger the safe operation of said motorcar and the safety of the plaintiff;" (3) "that the operator of said car knew of said danger, if any, or in the exercise of ordinary care could have known of such danger, if any, after he saw said dog enter upon the right of way as above set forth;" (4) "that the operator of said car thereafter in the exercise of ordinary care with the means and appliances at hand and with safety to said motorcar and its occupants could have slackened the speed thereof or stopped same . . . and thereby avoided striking said dog;" and (5) "that he carelessly and negligently failed so to do . . . and that as a direct result of such negligence . . . said motorcar was caused to strike said dog and thereby derail said motorcar and injure plaintiff."

Considered most favorably to plaintiff, the evidence tended to show that plaintiff was employed by defendant as a member of a bridge carpenter gang; that on June 8, 1938, he was directed by his foreman to accompany him on a trip to inspect bridges on defendant's "Tonika Line," a branch line between Roodhouse and Godfrey, Illinois. Plaintiff's duty was not to inspect the bridges, but to accompany the foreman and assist in placing the motorcar on and off the tracks as required. It is admitted ▮▮▮ "that said 'Tonika Line' transported both interstate and intrastate shipments when in the direct course of travel between points on said railroad."

Plaintiff left East Hardin, Illinois, for Roodhouse, about 6:15 A. M., on one of defendant's gasoline motorcars. He was accompanied by W. J. Leeson, the foreman, and Harry Poynter, assistant foreman and operator of the motorcar. The car weighed about 600 pounds. It was four feet in height and about seven feet long. The top was flat, about twenty inches wide and formed a double seat extending from front to back. There was a footboard on each side of the car

about sixteen to eighteen inches above the rails. The motive power was furnished by a one cylinder gasoline engine located under the seat. This engine made considerable noise. The car had four wheels and a mechanical brake by which four wheels could be locked. At twenty-five miles per hour, with its load of three men, the car could have been stopped within thirty to thirty-five feet.

A windshield twenty-eight to thirty inches high at the front of the car was covered with a black canvas. Plaintiff was seated on the right rear side of the car, facing sideways, with his feet on the right footboard. The operator sat in the center, on the left-hand side of the car, on a seat about four inches higher than the other men. Lesson sat on the left side of the car "right in front" of the operator and "right back of the windshield." The operator could see over the windshield and could see the track more than 2½ rail lengths ahead (twenty-six to thirty foot rails). He could see down the ends of the ties on each side and could easily have seen an object ten to twelve feet away from the rails when fifty to sixty feet from the car.

About 7:30 A. M., while within the city limits of Carrollton, Illinois, and approaching a street crossing, the car struck a large yellow shepherd (collie) dog, and was derailed. Plaintiff was thrown off and severely injured. At the time of the collision, the car was traveling about twenty-five miles per hour. The day was clear, the track level and located on an embankment about two and one-half to three feet above the general elevation on either side. The right of way on either side was level, except for a little drainage ditch fourteen to sixteen inches deep and six or eight feet back from the ties on plaintiff's (right) side. The elevation from the bottom of this drain to the rails was about four feet. The shoulder of the embankment was said to be about three to three and one-half feet high and the drainage ditch was at the bottom of the shoulder. There were weeds on the right of way fourteen to eighteen inches high. They extended to the foot of the shoulder and to within ten feet of the track. One of defendant's witnesses said the weeds were about knee high with possibly some higher.

At the point of the collision a footpath, used by school children, crossed the track at right angles. It came "up out of the water ditch" and led across the right of way. It is admitted that the motorcar and defendant's tracks were in good condition immediately preceding the collision. Afterwards, the front axle of the car was bent so that "a wheel jammed a little." When the motorcar was about 125 feet from the path, the plaintiff saw the dog in a yard adjoining defendant's right of way. The dog was 22 to 24 inches high and would weigh about 80 pounds. It was about 50 to 60 feet from the track, but was running toward it, galloping at a speed of about 12 miles per hour. Neither the dog nor the car changed speeds, prior to the collision. The parties concede that "the dog was aware of the fact

that the motorcar was approaching;" and that it was the noise of the motor which started the dog running and guided its movements, however, the car was clearly visible to the dog from the yard.

The dog entered the right of way (30 feet back from the tracks), when the car was 60 to 70 feet away. Plaintiff from his position on the car could see only about 3 or 4 inches of the dog's back until it got "to the track." It was in the path, and in the weeds, as it approached. Plaintiff did not know whether the dog was barking or not. When the motorcar was about 50 to 60 feet from the path and the dog about 18 feet from the tracks, the plaintiff spoke to the operator (plaintiff was "sitting right back near" the operator's right ear) and said, "Look out for the dog, Harry." The operator replied, "O.K. I see it," but he did nothing toward stopping or slackening the speed of the car. The right front wheel of the car hit the dog. The car was derailed and bumped along the ties, making scars on the ties, for some 60 feet before coming to a stop. The operator could have seen the dog until it was hit by the car. Plaintiff testified that he didn't suppose the dog was going to run on the track, maybe," but "it was coming in the direction of the track;" and he didn't know "what the dog was going to do." After the derailment, ▮▮▮ the dog was found dead beside the track near the path. Its neck was broken.

Poynter and Leeson both testified (for defendant) that they did not see the dog, nor know what had caused the derailment, until after the car came to rest. Poynter not only denied that he saw the dog, but also denied that plaintiff made any statement to him about the dog. He said he knew of no reason to stop the car before the derailment. Leeson was standing and had been watching the crossing ahead. He did not see or hear the dog, but was looking at his watch when the derailment occurred. He did not hear plaintiff warn Poynter. Poynter testified that the embankment or base of the rails was only 18 inches higher than the ditch, which was the lowest part of the right of way on the right-hand side.

The dog had been brought to town by its owner, only a few weeks before, and there was evidence that the dog "would run along beside cars (automobiles) and bite the wheels," but this was not known to the parties on the motorcar.

Appellant's insistence that its peremptory instruction should have been given is based upon the theory that the facts disclosed no actionable negligence; and that no inference of negligence on the part of defendant's operator in failing to slacken the speed of or stop the car could be drawn from a most favorable view of the whole evidence. Appellant says there was no evidence tending to show that the dog intended to or would get upon the tracks in front of the motorcar, but only that it was approaching the car for the purpose of running after it and barking at it; and that the facts and circumstances imposed no duty upon the operator to slacken the speed of or stop the car.

Since the action is brought under the Federal Employers' Liability Act supra, in determining the sufficiency of the evidence to make a submissible case for plaintiff, we are governed by the test announced by the decisions of the Federal Courts. [Weaver v. Mobile & Ohio Railroad Co., 343 Mo. 223, 120 S. W. (2d) 1105, 1109-10.] The rule applied, however, is the same rule applied by the courts of this State, and the rule is, that, if there is any substantial evidence to support the cause of action pleaded, it must be submitted to a jury. [Crain v. Illinois Central Railroad Co., 335 Mo. 658, 73 S. W. (2d) 786, 787; Hardin v. Illinois Central Railroad Co., 334 Mo. 1169, 70 S. W. (2d) 1075, 1078; Gunning v. Cooley, 281 U. S. 90, 50 Sup. Ct. 231, 233, 74 L. Ed. 720.] "Under the Federal rule; as under that of our state courts, the plaintiff is entitled on demurrer to the evidence to have the court assume that the evidence in his favor 'proves all that it reasonably may be found sufficient to establish, and that from such facts there should be drawn in favor of (plaintiff) all the inferences that fairly are deducible from them.' " [Poe v. Illinois Central Railroad Co., 335 Mo. 507, 73 S. W. (2d) 779, 785.]

Can the negligence charged in the petition and submitted by the instruction, supra, be inferred from a most favorable view of the whole evidence? On the facts here, the plaintiff was an employee of defendant and was being transported by the defendant in connection with his employment and plaintiff was entitled to have the operator of the motorcar exercise ordinary care for plaintiff's safety. [Jenkins v. Wabash R. Co., 335 Mo. 748, 73 S. W. (2d) 1002, 1007; Sandri v. Byram, 30 Fed. (2d) 784, 786.] This duty included the obligation to exercise ordinary care to prevent the derailment of the car by a collision with a dog. [Hoskins v. Bangor & A. R. Co., 135 Maine, 285, 195 Atl. 363, 364; Atchison, T. & S. F. R. Co. v. Molone, 81 Okla. 193, 197 Pac. 164, 165.]

According to a most favorable view of the whole evidence, we think it would have been apparent to an ordinarily prudent person, situated as was the operator of the car, that the dog would arrive at the tracks before the car reached the place where the path crossed. The car was traveling 25 miles per hour and the dog about 12, or about one-half as fast as the car, but the car had almost three times the distance to travel since, when the dog was 18 feet from the track, the car was 50 to 60 feet away from the path. The dog was coming directly toward the tracks and was giving no evidence of an intention to change its speed or course. It was apparent that the dog was in pursuit of the noisy moving motorcar; and that the embankment would be little, if any, obstruction to the dog.

On plaintiff's evidence, the operator saw the dog, knew of its approach along the path through the weeds, and was warned to look out for it, but did nothing to slacken speed or stop the car prior to the collision, although the car could have ▮▮▮ been stopped in 30 to 35

feet. We think that reasonable men could draw different conclusions as to the existence of or absence of negligence. "Negligence is ordinarily a question for the jury. It is always so when the evidence on material points is conflicting, or where the facts being undisputed, different minds might reasonably draw different conclusions from them." [Gratiot v. Mo. Pac. Ry. Co., 116 Mo. 450, 466, 21 S. W. 1094, 1098.]

██ The ordinary habits, characteristics and instincts of dogs are matters of common knowledge. Courts take judicial notice of the well known habits of domestic animals. [Hill v. Mo. Pac. Ry. Co., 49 Mo. App. 520, 535 (horses on track to run ahead of a train); Borden v. The Falk Co., 97 Mo. App. 566, 569, 71 S. W. 478 (treacherous and vicious nature of mules); Roy v. North K. C. Development Co. (Mo. App.), 226 S. W. 965, 966 (kicking propensities of mules); Moran v. C., B. & Q. R. Co. (Mo. App.), 255 S. W. 331, 333 (propensities of stock); McCleary v. C., B. & Q. R. Co. (Mo.), 264 S. W. 376, 380 (horses to frighten); Clinkenbeard v. Reinert, 284 Mo. 569, 225 S. W. 667, 670 (mad dogs to bite); State v. Wagner, 207 Iowa, 224, 226, 222 N. W. 407, 61 A. L. R. 882 (habits and instincts of chickens); Joliet v. Shufeldt, 144 Ill. 403, 413, 32 N. E. 969 (horses to run away when released); 23 C. J. 154, sec. 1978; 20 Am. Jur. 96, sec. 75.]

██ We must assume that the operator of the car was familiar with the ordinary habits and natural instincts of dogs, including collies (Restatement of the Law of Torts, Chap. 2, sec. 290, p. 780) and particularly of their tendency to run after noisy moving vehicles and of their habit of running in front of stock (unless trained) and in front of teams and wagons, motorcycles and other motor vehicles. It is a matter of common knowledge that dogs will run beside or in front of vehicles in all cases, except where the speed of the vehicle is too great; and that they will run behind vehicles only when they cannot run beside or in front of them. It is a matter of common knowledge that many dogs are hit and killed by moving motor vehicles on our streets and highways, and particularly dogs that chase automobiles. It is apparent from plaintiff's testimony that the operator saw the dog rushing headlong along the path, where its view of the tracks and of the approaching motorcar would at least be partially obstructed by weeds, and that the operator could observe that the dog would not have a full view of the motorcar, or a reasonable opportunity to gage its speed or distance, until the dog emerged from the weeds, some 10 feet back from the tracks, and only a jump or two from the path of the approaching car. Although the dog was not upon the tracks or in the path of the car, the facts and circumstances (considered most favorably to plaintiff) were such as to rebut any presumption that the dog would stay away from the tracks and out of the path of, and away from, the on-coming car.

██ On a most favorable view of the evidence, it would have been

apparent to a person of ordinary prudence and intelligence, located as was the operator of the car, that a collision between the car and the 80 pound dog would probably derail the car and injure those riding thereon. The operator of the car was familiar with the weight, speed and construction of the car, and the ease with which it could be removed from the tracks. He knew that the car could not be turned aside to dodge an obstruction. The danger was obvious. See, Paradis v. Maine Central R. Co., 81 N. H. 210, 123 Atl. 227 (where plaintiff, an experienced section hand, was injured by derailment of a motor-car when it ran over a dog which had habitually chased the car, by running in the rear, at the side, or in front, and it was held that the risk of injury was assumed; danger being obvious). We think that a jury could properly infer and find that defendant's operator failed to exercise ordinary care for plaintiff's safety.

In the case of Rhinehart v. St. Louis & S. F. R. Co., 129 Mo. App. 168, 173, 108 S. W. 103, 104, the court said: "The known habits of animals must be taken into consideration in such contingencies by the operatives of a train, and, if it would be apparent to a person of reasonable care that an animal is likely to be killed or injured in consequence of running in front of or against a train, what reasonably can be done to prevent an accident ought to be done." The same rule must, and does, apply to the operator of a motorcar, under the facts disclosed by the evidence in this ▇▇▇ case, and, if it would have been apparent to a person of ordinary care and prudence that a collision was likely or probable, and that derailment of the car and injury to its occupants might reasonably result, then it became and was the duty of the operator to stop or slacken the speed of the motorcar and avoid the danger. We think that under the facts and circumstances there was more than the mere possibility that a collision, derailment and injury might occur; there was a reasonable probability such collision, derailment and injury would occur. That dogs are liable to, and frequently do, run in front of the cars, under the circumstances shown, is a common and ordinary experience against which every reasonable and prudent man takes precaution. There was nothing extraordinary or unusual about the dog attempting to get in front of the car and, under the facts, it might reasonably have been expected that the dog would do so.

"If there is some probability of harm sufficiently serious that ordinary men would take precaution to avoid it, then failure so to do is negligence. That the danger will more probably than otherwise not be encountered on a particular occasion does not dispense with the exercise of care. One who crosses a railroad track may not reasonably anticipate that a train will in fact be met, but, by reason of the risk that one may be, he is called upon to do what is reasonably required to find out. . . . While 'the likelihood or unlikelihood of a future happening is the turning point,' as the test of duty to anticipate,

. . . this does not mean that the chances in favor of the happening must exceed those against it. The test is not of the balance of probabilities, but of the existence of some probability of sufficient moment to induce action to avoid it on the part of a reasonable mind. . . . If there was likelihood of injury, the duty to use care was not discharged merely because there was a greater unlikelihood of it." [Tullgren v. Amoskeag Mfg. Co., 82 N. H. 268, 276-77, 133 Atl. 4, 8, 9, 46 A. L. R. 380.]

In the case of Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S. W. (2d) 91, 98, this court said: "Appellant has cited a number of cases holding that liability for negligence is not to be predicated on hindsight but on reasonable foresight; and that a defendant is not legally responsible unless he omits precautions a reasonably prudent person would have taken to guard against the casualty. That is true, but it does not mean the defendant must have anticipated the very thing that happened. If a defendant in the exercise of ordinary care should have known the situation was unsafe and that some injury was likely to result, not that such was a mere remote possibility, he is dutybound to fend against it." If a collision was probable, the law, out of regard for the safety of the plaintiff on the car, would not permit the operator to take a chance that the dog would not be hit or the car derailed, and upon the point as to whether there was such probability, fair minded men might reasonably draw different conclusions. [See, Sandri v. Byram, supra, 30 Fed. (2d) 784, 786.] We are therefore of the opinion that the question, of whether the operator negligently failed to slacken the speed of or stop the motorcar and avoid the collision, derailment and resulting injury was under all the facts and circumstances a question for a jury.

██ We are unable to see any conflict between such a holding and the decision of the St. Louis Court of Appeals in the case of Flowerree v. Thornberry (Mo. App.), 183 S. W. 359, 360, wherein the court approved an instruction which advised the jury "that the defendant had a right to assume that the hound in question would exercise the ordinary instincts of such animals and would keep itself out of danger of collision with his automobile and if the jury believed from the evidence that at the moment immediately prior to the collision the hound was off the traveled part of the highway and out of the line of travel of said automobile and away from danger of collision then defendant had the right to assume that the hound would remain at such distance *unless there was something in the circumstances calculated to rebut such presumption.*" (Italics ours.) See also: Owen v. Southern Railway Co., 222 Ala. 499, 133 So. 33, 34 (where the court said the presumption that a dog would avoid existing danger is not to be indulged if he is helpless or indifferent to the danger); Louisville & N. R. Co. v. Coxe, 218 Ala. 25, 117 So. 293, 294 (where the court said the presumption that dog will get out of the way in

time to avoid injury or not move into danger exists only where "there is nothing in the circumstances of its approach or manner of its being upon the track to indicate to a reasonably prudent operator that the animal is helpless or indifferent to its surroundings and danger.''); Jones v. Bond, 40 Fed. 281, 282 (where the court ,said: ''The presumption is that such dog has the instinct and ability to get out of the way of danger, and will do so, unless its freedom of action is interfered with by other circumstances at the time and place.''); Moore v. Charlotte Elec. Ry., Lt. & Power Co., 136 N. C. 554, 48 S. E. 822, 823, (where it was said that a dog "must be placed on the same footing with that of a man walking upon or near a railroad track apparently in possession of all his faculties," and that the presumption would not apply to "a dog near or upon the track in a position which showed that he was helpless, or totally oblivious of his surroundings.''); Sanders v. Hayes, 128 S. C. 181, 122 S. E. 572, 575, (where court held motorist's liability for negligence in killing a dog was to be determined by application of the doctrine of due care under all the circumstances, and said: ''In the application of that standard the extent to which the driver of a motor vehicle on a street or highway may safely or properly rely upon the intelligence and agility of a dog to avoid a collision is a matter for the consideration of the triers of fact, whose duty it is, in the light of common experience, to determine the degree of care required of the driver of the vehicle in the circumstances of the particular case.''); Fowles v. Seaboard Airline Ry. Co., 73 S. C. 306, 308, 53 S. E. 534, (where the court held it reasonable to place a dog on "somewhat the same footing as a human being when in possession of all his faculties and capable of seeing the danger and escaping from it.''); Hoskins v. Bangor & A. R. Co., supra, 195 Atl. 363, (where a case was made for a jury on the negligence of an operator of a motorcar in not seeing a dog come on to tracks and in not taking precautions to avoid derailment of the car and injury to plaintiff); A. T. & S. F. R. Co. v. Molone, supra, 197 Pac. 164, 165 (where a dog was upon the track, running toward the approaching motorcar upon which plaintiff was riding, and the duty of the operator to plaintiff required precautions); Citizens' Rapid Transit Co. v. Dew, 100 Tenn. 317, 322, 45 S. W. 790, 40 L. R. A. 518 (where court said a motorman could not rely on presumption that a dog would move out of danger where the dog was "pointing" birds on the track); West Chicago Street Ry. Co. v. Klecka, 94 Ill. App. 346, 349 (where court held, in effect, that a motorman could not rely on a dog escaping the danger where the dog was nosing or sniffing along on the ground on a public highway and headed for the track); Klein v. St. Louis Transit Co., 117 Mo. App. 691, 93 S. W. 281, 283 (where court said that there was no reason to apprehend danger to a dog on the track, or duty to stop the car "unless there is something about the dog's actions and movements or his inaction to indicate . . . that he is

either unable to get off the track or oblivious to the approach of the car.'')

We cannot hold, as a matter of law, that an ordinarily prudent person would, under the facts and circumstances in evidence, have assumed that the dog would stay out of danger, avoid a collision with the motorcar and not endanger the safety of the motorcar and its occupants. A case may not be withdrawn from the jury unless all reasonable men, in the honest exercise of a fair, impartial judgment, would draw the same conclusion from the facts which condition the issue. [Parrent v. Mobile & O. R. Co., 334 Mo. 1202, 70 S. W. (2d) 1068, 1073; Gardner v. Mich. Cent. R., 14 Sup. Ct. 140, 144, 150 U. S. 349, 37 L. Ed. 1107.]

██ Instruction ''H,'' mentioned in the order granting a new trial, is in part as follows: ''The court instructs the jury that *the dog in question* was an animal of agility and celerity in avoiding and escaping-danger, not possessed by the lower animals, and the operator of a motorcar *may assume* that a dog will avoid danger and not move into it, by coming in contact with a motorcar, of which the dog is aware, when free to avoid the same; therefore, the court further instructs you,' '' etc. (Italics ours.) The remainder of the instruction is in effect a converse of part (2), supra, of plaintiff's principal instruction. Appellant contends that the instruction was prejudicially erroneous because it was a comment on the evidence, was argumentative and invaded the province of the jury, was a positive misstatement of the law applicable to the case and was confusing and misleading.

The opening clause was not a statement of a rule of law, but a statement of fact about ''the dog in question'' which clearly invaded the province of the jury. It did not require a finding by the jury of the facts stated. ''In a law case the jury is the tribunal established by the law to arrive at the facts. Instructions perform ██ the office of informing the triers of facts what principles of law are applicable under the pleadings to the facts determined by them to exist.'' [Radabaugh v. Williford, 342 Mo. 528, 116 S. W. (2d) 118, 120.] The instruction was erroneous in telling the jury, in effect, that the operator could unqualifiedly assume that the dog would avoid danger and not move into it, merely because the dog was aware of the danger and free to avoid it. In this case there was evidence from which an inference might be drawn that it would have been apparent to a person of ordinary care operating the motorcar that the dog was not going to avoid the danger, but was in fact moving into it. The assumption that the dog would avoid a collision could not be made where the evidence was sufficient to show a collision was probable. The first part of the instruction, set out, supra, ignores the fact that there was evidence from which the jury could infer and find that it should have been apparent to the operator in the exercise of ordinary care that a collision with the dog was a reasonable probability. [Zumwalt v.

Chicago & Alton R. Co. (Mo.), 266 S. W. 717, 726 (11); Goodwin v. Eugas, 290 Mo. 673, 236 S. W. 50, 53 (3); West Chicago St. R. Co. v. Klecka, supra; and Citizens' Rapid Transit Co. v. Dew, supra.] In the latter case the court said: "It is said that the judge should have told the jury that the motorman might rely upon the keen sense of hearing, great alertness, intelligence, and active celerity common to dogs, and they might consider and weigh their own practical knowledge as to the nature, character, and quality of dogs, and consider all these matters in reaching a verdict in the case. The request, we think, is too broad. Unquestionably, the jury might take into consideration common knowledge and observation about the habits and qualities of dogs, but it was going too far to say that the motorman might rely upon the quickness and celerity of the dog, and thus absolve himself from all duty and care to prevent the accident, which is virtually what the request implies." We think instruction "H" was erroneous and clearly misleading and that the statement, as to what the operator could assume, offset and nullified the submission in the later part of the instruction with reference to the exercise of care by such operator. The court did not err in granting a new trial on account thereof.

Instruction "C," mentioned in the order granting a new trial, is defendant's burden of proof instruction. While this instruction is rather long and cumbersome, contains certain repetitions and is subject to criticism, it is unnecessary to determine whether the giving of the instruction alone would have warranted the granting of a new trial. In any event the new trial was proper on account of Instruction "H."

Respondent further contends that Instruction "G" is erroneous. This instruction submitted to the jury the issue, among others, "that Poynter in the exercise of reasonable care, did not know, or *could not have known of the approach of the dog until the time of the collision* . . ." (Italics ours.) There was no evidence in the record to support such a finding as was submitted by the italicised portion of the instruction.

The order granting a new trial is affirmed and the cause remanded. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.